# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| **BARBARA BROWNE** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No.: CPU5-21-000191** |
| | ) | |
| **KELLY CORD** | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: December 5, 2022
Decided: January 31, 2023

Daniel L. Huestis, Esq.
Hudson, Jones, Jaywork & Fisher, LLC
225 South State Street
Dover, DE 19901
*Attorney for Plaintiff*

Gregory A. Morris, Esq.
Liguori & Morris
46 The Green
Dover, DE 19901
*Attorney for Defendant*

## <u>DECISION AFTER TRIAL</u>

**DANBERG, CJ.**

Plaintiff Barbara Browne ("Browne") brings this action against Defendant Kelly Cord ("Cord") to recover for breach of contract. On December 5, 2022, a trial was held in the matter. At trial, the Court heard testimony from five witnesses and documentary evidence was submitted by the parties. At the conclusion of trial, the Court reserved decision. This is the Court's Final Decision After Trial.

## FACTS

In March 2018, Browne moved into Cord's home and lived with her for seven months while recovering from knee surgery.[1] Although it is disputed as to who suggested the idea of Browne living in the ranch home Cord inherited, it is undisputed that the parties orally agreed Browne could live in Cord's ranch home rent free for the duration of her life. Cord did testify that she would have sold the ranch home after her mother passed had someone not occupied it.

Subsequent to the oral agreement, Browne moved out of Cord's home and the parties started preparing the ranch home for Browne to move in. Browne moved into the ranch home in May or June of 2019. According to Browne, she hired a contractor, Larry Hughes[2] ("Hughes"), to perform numerous renovations at the ranch home. Browne testified the renovations included removing carpet, replacing a back

---

[1] Browne moved into Cord's home shortly after the passing of Barbara Miller, Cord's mother, and Browne's sister-in-law. Cord inherited a ranch home after her mother passed away. While staying at Cord's home, Brown told Cord how she always wanted to live in a ranch home.

[2] Hughes testified that he has been in contracting for 30 years and has a general contractor's license.

2

door, and fixing a bathroom.[3]  Browne stated she paid Hughes forty-three to forty-six thousand dollars for the renovations. In addition to the work performed by Hughes, Browne testified she hired a different contractor, G.R. Makdad Contracting L.L.C. Home Improvements & Repairs ("G.R. Makdad"), to install a new roof, which cost a total of 9,350.00.[4]

While renovating the ranch home, Browne became concerned over the power to enforce the life estate and asked Cord to reduce the oral agreement to a written agreement.[5]  On July 12, 2019, Browne's attorney sent Cord a letter proposing the oral agreement be reduced to writing to protect Browne's interest.[6]  The letter also requested that Cord be willing to reimburse Browne for her investment into the property less the reasonable rental value for her time occupying the ranch home *if* Cord was not willing to sign a written acknowledgment of the oral agreement.[7]

After receiving the letter from Browne's lawyer, Cord testified that she informed Browne she would not put the oral agreement in writing or pay for any renovations.[8]  Further, Cord stated she informed Browne on more than one occasion that she would not be responsible for any improvements made to the ranch home.

---

[3] Hughes's testimony confirmed Browne's testimony and stated the renovations included: replacing basement doors, windows, and floors; changing the lighting and receptacles; painting; trimming and removing trees; and working on the outdoor barn. The renovations took between nine and ten months.

[4] Pl.'s Ex. 1.

[5] Browne testified Cord initially agreed to memorialize the oral agreement, and thereafter refused to do so.

[6] Def.'s Ex. 1.

[7] *Id.*

[8] Cord testified that she refused to put the oral agreement into writing because they were family members, and the oral agreement was sufficient.

Browne testified she continued to renovate the ranch home knowing that Cord refused to pay for any of the renovations.

Deborah Linville ("Linville"), a friend of both Cord and Browne, confirmed that on two separate occasions, she was present when Browne had asked Cord if she could make renovations to the ranch home and, on both occasions, Cord informed Browne that she could do what she wanted, but Cord would not pay for any renovations.[9] According to Linville, the ranch home did not need any renovations, it only needed to be emptied and cleaned prior to Browne moving in.

On December 10, 2020, Browne had another surgery and left the ranch home to recover at her daughter's residence.[10] Browne remained at her daughter's home, despite wanting to stay at the ranch home because she felt uncomfortable with her rights to the ranch home since Cord would not agree to reduce the oral agreement into writing. Cord testified, that in her mind, the life estate was conditional on Browne living in the ranch home. On the contrary, Browne believed that the life estate had no conditions.

In October 2021, Cord sold the ranch home to Robert Sylvester ("Sylvester"). Cord testified Browne abandoned the ranch home for a year before she sold it. According to Cord, the ranch home was livable when Browne moved in, but worse

---

[9] Linville also testified that she was present, on two separate occasions, when Cord and Browne discussed the oral agreement, granting Browne a life tenancy in the ranch home.

[10] Browne stated she tried to take care of the ranch home after she left but was unable to.

when she moved out. Specifically, Cord testified that the flooring was ripped out, the wallpaper was ripped off the walls, and appliances were removed. Although he stated he was informed that renovations were made to the ranch home, Sylvester purchased the ranch home as-is from Cord. Sylvester testified that it was clear a new roof had been professionally installed but the flooring, carpet, and lighting fixtures that were installed were clearly removed and a back door and the windows were not installed correctly.[11] Browne admitted that when she left the ranch home, she removed the newly installed flooring and the new appliances she purchased.

## STANDARD OF REVIEW

As the trier of facts, the Court has the sole discretion to determine the credibility of the witnesses and any evidence provided.[12] The Court must reconcile any conflicting evidence that was presented at trial—if reasonably possible—in order to find congruity.[13] If the Court is unable to find such congruity, the Court must determine which portions of the testimony deserve more weight.[14] The Court must disregard any portion of the testimony that it finds unsuitable for consideration. The Court considers the witnesses' demeanor, the fairness and descriptiveness of their testimony, their ability to personally witness or know the facts about which

---

[11] Neither Cord nor Sylvester places a monetary value on the damages caused by Browne's removal of the items.
[12] *Nat'l Grange Mut. Ins. Co. v. Davis,* 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).
[13] *Id.*
[14] *Id.*

they testify, and any biases or interests they may have concerning the nature of the case.[15]

## DISCUSSION

### A. Browne's Claim for Breach of Contract

Under Delaware law, to recover on a claim for breach of contract, the plaintiff must establish by a preponderance of the evidence that: "(1) a contract exists between the parties; (2) the defendant breached the terms of the contract; and (3) as a result, the plaintiff suffered damages".[16] The Court must first determine whether the plaintiff established the existence of a contract by a preponderance of the evidence before determining whether a breach has occurred.[17] Under Delaware law, a contract is "an agreement upon a sufficient consideration to do or not to do a particular thing".[18] In order to create a contract, there must be mutual assent to the terms of the agreement elements, also known as the meeting of the minds.[19] "Mutual assent requires an offer and an acceptance wherein all the essential terms of the proposal must have been reasonably certain and definite".[20] "Thus, if any portion of

---

[15] *State v. Westfall,* 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).
[16] *Gregory v. Frazer,* 2010 WL 4262030, at *1 (Del. Com. Pl. Oct. 8, 2010).
[17] *Howlett v. Zawora,* 2012 WL 1205103 (Del. Com. Pl. March 30, 2012).
[18] *Id.*
[19] *Thomas v. Thomas,* 2010 WL 1452872 (Del. Com. Pl. 2010).
[20] *Id.* (quoting *Gleason v. Ney,* 1981 WL 88231 (Del. Ch.1981)).

6

the proposed terms is not settled there is no agreement".[21]  Under Delaware law, there can be no enforceable contract where there is no meeting of the minds.[22]

Here, the Court finds the parties never reached mutual assent or a meeting of the minds.  There was no testimony or documentary evidence entered in the record indicating that Browne and Cord reached an understanding as to the condition that Browne live in the ranch home to retain the life estate.  Cord's testimony indicated it was her understanding that Browne's life estate was conditional on her living in the ranch home.  Moreover, Cord indicated she would have immediately sold the ranch home after her mother passed had someone not occupied it.  Contrary to Cord's understanding, Browne believed her life estate had no conditions. Browne wanted to stay in the ranch home but decided, after recovering from surgery she would not return because Cord would not agree to reduce the oral agreement into writing.  The lack of agreement or at least understanding over who would pay for renovations or necessary repairs further underscores that there was no meeting of the minds. Although it was undisputed that the parties believed they entered into an oral agreement regarding Browne having a life estate in the ranch home, the evidence and testimony demonstrate the parties never reached mutual assent to render the oral

---

[21] *Id.*

[22] *Rodgers v. Erickson Air–Crane Co. L.L.C.,* 2000 WL 1211157 (Del. Super. 2000).

7

agreement enforceable. Because the oral agreement is unenforceable, the Court finds there was no breach of contract.

## B. Browne's Claim for Unjust Enrichment

In this case, Browne did not set forth a claim for unjust enrichment in her *pro se* filed Complaint. However, the Court has previously found that where *pro se* pleadings can be fairly construed as to have included a claim for unjust enrichment, the unpled claim will be acknowledged.[23] Furthermore, while both parties were represented by Delaware counsel at the trial stage, the Complaint was originally filed *pro se* and this Court will treat it as such. The Court will not give weight to the technical inaccuracies of a complaint filed *pro se* and turn a blind eye to the substance of pleadings that so clearly lay out a claim for unjust enrichment. Thus, the Court will apply the elements of unjust enrichment to the facts of this case.

Pursuant to Delaware law, "unjust enrichment 'is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience'".[24] The following are the elements of unjust enrichment: "(1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law".[25] Under

---

[23] *Terry v. Robin Drive Auto*, 2017 WL 65842, at *6 (Del. Com. Pl. Jan. 4, 2017).
[24] *Id.* (citing *Nemec v. Shrader,* 991 A.2d 1120, 1129 (Del. 2009)).
[25] *Id.*

8

a theory of unjust enrichment, a plaintiff is entitled to recover the amount of money unjustly retained by the defendant.[26] "A claim for unjust enrichment cannot survive when there is an adequate remedy under contract law."[27]

In determining whether Cord has been unjustly enriched by the renovations to the ranch home that Browne paid for, the Court will evaluate the renovations performed by Hughes and the roof installation by G.R. Makdad separately.

## A. Renovations Performed by Hughes

The Court finds that Cord was not enriched by the renovations performed by Hughes because Cord did not unjustly benefit to the detriment of Browne. First, none of the renovations performed by Hughes were of the same nature as the roof. They did not protect and preserve the value of the property. They were performed solely for Browne's comfort, use, and enjoyment of the ranch home. Secondly, Browne admitted she removed the newly installed flooring and new appliances prior to leaving the ranch home, which means Cord did not enjoy and financially benefit from these renovations. And thirdly, in removing the items, Brown actually caused substantial interior damage to the ranch home. Therefore, Cord could not have received an enrichment from these renovations.

---

[26] *Id.* (citing *Mehta v. Smurfit–Stone Container Corp.,* 2014 WL 5438534, at *6 (Del. Ch. Oct. 20, 2014)).
[27] *Id.* (citing *Uppal v. Waters,* 2016 WL 4211774, at *3 (Del. Super. Aug. 9, 2016)).

However, there was no testimony or evidence submitted as to the loss of value to the home due to such interior damage. Had the Court heard such evidence it would have reduced the amount of Browne's impoverishment by such loss of value to the ranch home due to this interior damage. Therefore, the Court finds Cord was not unjustly enriched as to the renovations performed by Hughes.

## B. Roof Installation by G.R. Makdad

The Court finds that Cord was enriched as to the roof installation by G.R. Makdad. It was undisputed that Cord received a new roof on the ranch home at no cost to her, which added to the value of the ranch home. Additionally, Cord benefited from having Browne occupy the ranch home because when real property is unoccupied for an extended period of time, it is susceptible to numerous problems, such as vagrants, criminal activity, animal damage, and weather damage. The Court also finds that Browne was impoverished because she paid for the roof installation. It is undisputed that Browne hired G.R. Makdad to install a new roof, which cost her $9,350.00.[28]

As to the third element, there is a relationship between Cord's enrichment and Browne's impoverishment because the value sought and received by Cord following the sale of the ranch home would not have been there had Browne not paid for the

---

[28] Pl.'s Ex. 1.

installation of a new roof. Therefore, the Court finds there is a relationship between Cord's enrichment and Browne's impoverishment.

Regarding the fourth element, Cord does not have a valid justification for the enrichment. Cord testified she sold the ranch home because she believed the life tenancy was conditioned upon Browne living at the ranch home and Browne had not been living in the ranch home for a year. However, Delaware law does not require a person to live on the real property in which they have been granted a life estate. In addition, Cord did not inform Browne of this condition and Browne did not believe she had to live in the ranch home to retain her life tenancy. Further, no testimony or documentary evidence was introduced in the record to demonstrate the parties mutually assented to such a condition. As such, this Court cannot find Cord had a valid justification for the enrichment.

Turning to the fifth element, there is an absence of a remedy provided by law because the Court found Browne has no claim for breach of contract. While it is undisputed that the parties believed they entered into an oral agreement, the Court determined the agreement was unenforceable.[29] Therefore, Browne is left without a remedy provided by law.

Accordingly, the Court finds that Browne has established by a preponderance of the evidence that Cord was enriched to Browne's detriment. The uncontroverted

---

[29] Cord sold he ranch home in October 2021 further limiting Browne's potential remedy.

testimony and documentary evidence presented at trial established that Cord's enrichment derived from Browne having paid for the roof to be by G.R. Makdad. Thus, the Court finds Cord unjustly enriched by $9,350.00.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court finds in favor of Browne. Browne is awarded damages in the amount of $9,350.00, and each party shall bear its own costs.

**IT IS SO ORDERED.**

**The Honorable Carl C. Danberg**
**Chief Judge**
